**Law Offices of Jerry L. Steering**

Jerry L. Steering, SBN 122509
LAW OFFICE OF JERRY L. STEERING
4063 Birch Street
Suite 100
Newport Beach, CA 92660
Tel.:     (949) 474-1849
Fax:      (949) 474-1883
e-mail:  jerrysteering@yahoo.com

Attorney for Plaintiffs David Parnell and Lee Marels

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID PARNELL and LEE MARELS | ) CASE NUMBER:  CV 12-03712 PA (OPx) |
| Plaintiffs, | ) THIRD AMENDED COMPLAINT FOR |
| | ) DAMAGES FOR VIOLATION OF |
| vs. | ) FEDERAL CONSTITUTIONAL RIGHTS |
| | ) UNDER COLOR OF STATE LAW |
| COUNTY OF RIVERSIDE, DAVID | ) (42 U.S.C. § 1983) FEDERAL |
| HORN, ROBERT THOMAS, ROBERT | ) CONSTITUTIONAL CLAIMS FOR |
| CORNETT, RYAN DEANNE, | ) VIOLATION OF FOURTH |
| MICHAEL CALLAHAN, DAVID | ) AMENDMENT RIGHT TO  FREEDOM |
| FLANNERY, MARK TITUS and DOES | ) FROM USE OF UNREASONABLE |
| 1 through 10, inclusive, | ) FORCE ON PERSON, VIOLATION OF |
| | ) FOURTH AMENDMENT RIGHT TO |
| Defendants. | ) FREEDOM FROM UNLAWFUL / |
| | ) UNREASONABLE SEIZURE OF |
| | ) PERSON, VIOLATION OF FOURTH |
| | ) AMENDMENT RIGHT TO FREEDOM |
| | ) FROM UNREASONABLE / UNLAWFUL |
| | ) ENTRY INTO & SEARCH AND |
| | ) SEIZURE OF PRIVATE RESIDENCE, |
| | ) and CALIFORNIA STATE LAW CLAIMS |
| | ) FOR VIOLATION OF CAL. CIVIL CODE |
| | ) § 52.1, FALSE ARREST / FALSE |
| | ) IMPRISONMENT, ASSAULT, |
| | ) BATTERY, TRESPASS TO PRIVATE |
| | ) RESIDENCE - INVASION OF RIGHT TO |
| | ) PRIVACY, NEGLIGENCE, |

THIRD AMENDED COMPLAINT FOR DAMAGES

1

CONVERSION and TRESPASS TO CHATTELS

**[JURY TRIAL DEMANDED]**

**Law Offices of Jerry L. Steering**

**COME NOW** plaintiffs David Parnell and Lee Marels, and show this Honorable Court the following:

## JURISDICTIONAL ALLEGATIONS

1.     As this action is brought under 42 U.S.C. § 1983 this court has jurisdiction over this case under its federal question jurisdiction pursuant to 28 U.S.C. §1331.

2.     As the incidents complained of in this action occurred in the City of Lake Elsinore, County of Riverside, State of California, within the territorial jurisdiction of this court, venue properly lies in this court pursuant to 28 U.S.C. §1391(b)(2.)

## GENERAL ALLEGATIONS

3.     Plaintiff David Parnell, hereinafter referred to as "PARNELL", or "plaintiff PARNELL", is a natural person, who, at all times complained of in this action, resided in the City of Lake Elsinore, County of Riverside, State of California, within the jurisdiction of this honorable court.

4.     Plaintiff Lee Marels, hereinafter referred to as "PARNELL", or "plaintiff Marels", is a natural person, who, at all times complained of in this action, resided in the City of Lake Elsinore, County of Riverside, State of California, within the jurisdiction of this honorable court.

THIRD AMENDED COMPLAINT FOR DAMAGES

**Law Offices of Jerry L. Steering**

5.     Defendant County of Riverside, hereinafter "COUNTY", is a municipal entity located in the State of California; within the territorial jurisdiction of this court.

6.     Defendant Robert Thomas, hereinafter "THOMAS", is, and at all times complained of herein was, a sworn deputy sheriff with the Riverside County Sheriff's Department.  At all times complained of herein, THOMAS was acting as an individual person under the color of state law, pursuant to his authority as a sworn deputy sheriff, and was acting in the course of and within the scope of his employment with the defendant COUNTY.

7.     Defendant David Horn, hereinafter "HORN" is, and at all times complained of herein was, a sworn deputy sheriff, employed by the Riverside County Sheriff's Department.  At all times complained of herein, HORN was acting as an individual person under the color of state law, pursuant to his authority as a sworn deputy sheriff, and was acting in the course of and within the scope of his employment with the defendant COUNTY.

8.     Defendant Robert Cornett, hereinafter "CORNETT" is, and at all times complained of herein was, an Investigator and a sworn deputy sheriff, employed by the Riverside County Sheriff's Department. At all times complained of herein, CORNETT was acting as an individual person under the color of state law, pursuant to his authority as a sworn deputy sheriff, and was acting in the course of and within the scope of his employment with the defendant COUNTY.

THIRD AMENDED COMPLAINT FOR DAMAGES

3

9.    Defendant Ryan Deanne, hereinafter referred to as "DEANNE", is, and at all times complained of herein was, an Investigator and a sworn deputy sheriff, employed by the Riverside County Sheriff's Department. At all times complained of herein, DEANNE was acting as an individual person under the color of state law, pursuant to his authority as a sworn deputy sheriff, and was acting in the course of and within the scope of his employment with the defendant COUNTY.

10.    Defendant Michael Callahan, hereinafter referred to as "CALLAHAN", is, and at all times complained of herein was, an Investigator and a sworn deputy sheriff, employed by the Riverside County Sheriff's Department. At all times complained of herein, CALLAHAN was acting as an individual person under the color of state law, pursuant to his authority  as a sworn deputy sheriff, and was acting in the course of and within the scope of his employment with the defendant COUNTY.

11.    Defendant David Flannery, hereinafter referred to as "FLANNERY", is, and at all times complained of herein was, an Investigator and a sworn deputy sheriff, employed by the Riverside County Sheriff's Department. At all times complained of herein, FLANNERY was acting as an individual person under the color of state law, pursuant to his authority  as a sworn deputy sheriff, and was acting in the course of and within the scope of his employment with the defendant COUNTY.

12.    Defendant Mark Titus, hereinafter referred to as "TITUS", is, and  at all times complained of herein was, a sworn deputy sheriff, employed by the Riverside

THIRD AMENDED COMPLAINT FOR DAMAGES

4

County Sheriff's Department. At all times complained of herein, TITUS was acting as an individual person under the color of state law, pursuant to his authority as a sworn deputy sheriff, and was acting in the course of and within the scope of his employment with the defendant COUNTY.

13.    Defendants DOES 1 through 6, inclusive, are sworn deputy sheriffs and/or supervisor deputy sheriff and/or investigators and/or Community Service Officers and/or dispatchers and/or some other peace officer and/or public officer or employee of defendant COUNTY, employed by the Riverside County Sheriff's Department, who in some substantial way committed some or all of the tortious actions (and constitutional violations) complained  of in this action, and/or are otherwise responsible for and liable to plaintiff for the acts complained of in this action. Defendants DOES 1 through 6, inclusive, identities are, and have been, unknown to plaintiffs, who will amend their complaint to add and to show the actual names of said DOE defendants when ascertained.

14.    At all times complained of herein, DOES 1 through 6, inclusive, were acting as individual persons under the color of state law, pursuant to their authority as sworn deputy sheriffs and/or dispatchers and/or other peace officer and/or public officers, employed by the Riverside County Sheriff's Department, and were acting in the course of and within the scope of their employment with Defendant COUNTY.

15.    Defendants DOES 7 through 10, inclusive, are sworn police officers and/or supervisors, such as Sergeants and/or Lieutenants and/or Captains and/or Commanders

THIRD AMENDED COMPLAINT FOR DAMAGES

5

**Law Offices of Jerry L. Steering**

and/or other Supervisory personnel and/or policy making and/or final policy making officials (i.e. Chief of Police, Assistant Chiefs, Commanders, City Managers and other public officers employed by the Riverside County Sheriff's Department, who are in some substantial  way liable and responsible for, or otherwise proximately caused and/or substantially contributed to the occurrences complained of by plaintiff in this action, such as via Supervisory Liability (i.e. failure to properly supervise, improperly directing subordinate deputies, approving actions of subordinate deputies, failing to intervene in and stop unlawful actions of their subordinates), such as "bystander liability", and such as by creating and/or causing the creation of and/or contributing to the creation of the policies and/or practices and/or customs and/or usages of the Riverside County Sheriff's Department and whose identities are and have been unknown to plaintiff, who will amend his complaint to add and to show the actual names of said DOE defendants when ascertained.

16.    At all times complained of herein, DOES 7 through 10, inclusive, were acting as individual persons under the color of state law, pursuant to their authority as the Sheriff and/or Undersheriff and/or Assistant  Sheriffs and/or Commanders and/or Captains  and/or Lieutenants and/or Sergeants and/or other Supervisory personnel and/or policy making and/or final policy making officials with the Riverside County Sheriff's Department, and/or some other public official(s) with defendant COUNTY, and were

THIRD AMENDED COMPLAINT FOR DAMAGES

6

acting in the course of and within the scope of their employment with defendant COUNTY.

17.    Moreover, at all times complained of herein, defendants DOES 1 through 10, inclusive, were acting pursuant to, or otherwise contributed to the creation and maintenance of, the customs, policies, usages and practices of the Riverside County Sheriff's Department / County of Riverside, for, *inter alia*: 1) for using excessive / unreasonable force on persons; 2) for unlawfully seizing persons and their papers and effects; 3) for unlawfully searching private residences; 4) for obtaining arrest warrants and search warrants based upon the presentation of false and misleading information, 5) for retaliating against persons for exercise of their right to protest government / police actions; and 5) for maliciously prosecuting (including framing) persons. Said customs, policies, usages and practices of the Riverside County Sheriff's Department / County of Riverside were a proximate cause  of the very same federal constitutional violations complained by the plaintiff in this action.

18.    In addition to the above and foregoing, all of the THOMAS, HORN, CORNETT, DEANNE, CALLAHAN, FLANNERY, TITUS, FLANNERY,   and the DOE defendants to this action, acted pursuant to a conspiracy, agreement and understanding and common plan and scheme to deprive plaintiffs PARNELL and MARELS of their federal constitutional and statutory rights, and California constitutional and statutory state law rights, as complained of in this action, and acted in joint and

THIRD AMENDED COMPLAINT FOR DAMAGES

7

concerted action to so deprive the plaintiff of those rights as complained of herein; all in violation of 42 U.S.C. § 1983, and otherwise in violation of California state law, as described below.

19.    Moreover, said conspiracy / agreement / understanding / plan / scheme / joint action / concerted action, above-referenced, was a proximate cause of the violation of the plaintiffs' federal and state constitutional and statutory rights, as complained of herein.

20.    Plaintiffs timely filed their tort claims against the County of Riverside pursuant to the California Tort Claims Act, Cal. Gov't Code § 900 *et seq.*, and said claims were denied by operation of law less than six months prior to the date of the filing of this original Complaint in this action.

<u>FIRST CAUSE OF ACTION</u>
<u>VIOLATION OF 42 U.S.C. § 1983</u>
Violation of Fourth Amendment Rights
Excessive / Unreasonable Use of Force on Person
(By All Plaintiffs Against Defendants THOMAS, HORN
and DOES 1 through 7, inclusive)

21.    Plaintiffs hereby reallege and incorporates by reference the allegations set forth in paragraphs 1 through 20, inclusive, above, as if set forth in full herein.

22.    On May 20, 2011, PARNELL purchased a piece of sonar electronic construction equipment, a "Ditch Witch" 752 locator (Serial Number 8281296), from his regular (and legitimate) construction supply company; "Roadrunner Construction Supply", located in  San Bernardino, California (*See*, attached Exhibit "A'; copy of sales receipt for "Ditch Witch" 752 locator / tracker.) A Ditch Witch locator / tracker is a piece

THIRD AMENDED COMPLAINT FOR DAMAGES

8

Law Offices of Jerry L. Steering

of sonar equipment used by subterranean drillers on construction projects, to locate metal and pipelines underground, so that construction companies can know that they are not drilling though pipelines, electrical lines, or other objects or items.

23.    After owning and using said Ditch Witch 752 locator for a few weeks, PARNELL decided to resell said Ditch Witch 752 locator that he had recently purchased from Roadrunner Construction Supply.

24.    PARNELL listed said Ditch Witch 752 locator for sale on ebay.com.  While the Ditch Witch was listed for sale on e-bay, PARNELL receive several e-mails with questions regarding the item from potential buyers.

25.    The potential buyers asked where PARNELL originally purchased the item from, and also asked for the item serial number of said Ditch Witch 752 locator. PARNELL provided the potential buyers with the requested item serial numbers.

26.    PARNELL then received a telephone call from a man who claimed to have been interested in purchasing said Ditch Witch 752 locator, who said that he was local, and that he wanted to come over and view said Ditch Witch 752 locator.

27.    PARNELL and the man had numerous telephone conversations. Eventually, PARNELL and the man agreed to meet on June 9, 2011 at his home; located at 18458 Eucalyptus Avenue, Lake Elsinore, CA 92532.

THIRD AMENDED COMPLAINT FOR DAMAGES

9

**Law Offices of Jerry L. Steering**

28.     PARNEL and MARELS, PARNELL's friend from England, were stuck in traffic, so PARNELL asked MARELS to call this potential buyer and to reschedule the meeting for 7:30 a.m. the next morning, June 10, 2011, at PARNELL's home.

29.     Plaintiff Lee Marels ("MARELS"), is a professional golfer, who was staying with his friend PARNELL, to try to make it onto the PGA Tour.[1]

30.     Both PARNELL and MARELS are English nationals. PARNELL is a legal resident alien in the United States, and MARELS was staying with PARNELL at his Lake Elsinore residence, on a visitor's visa, to get on the PGA Tour.

31.     At approximately 7:20 a.m. on June 10, 2011, PARNELL was awoken to the sound of voices at his window. PARNELL heard a man (DAVID HORN and/or ROBERT THOMAS and/or DOE(S) 1 and 2), shout his name from outside. PARNELL asked the man if he was there to purchase the Ditch Witch, to which the man answered in the affirmative.

32.     Upon opening the front door, PARNELL saw that one of the men (a large strong looking male[2]) was already standing in his front yard and the other (smaller of the two[3]) was still climbing over the front gate  which was padlocked[4].

33.     Both the men[5] then proceeded to the front door. PARNELL noticed that both

---

[1] MARELS was already a player on the European PGA Tour.
[2] DAVID HORN and/or  ROBERT THOMAS and/or DOE(S) 1 and 2.
[3] DAVID HORN and/or  ROBERT THOMAS and/or DOE(S) 1 and 2.
[4] Unbeknownst to PARNELL or MARELS, the two men inquiring about the ditch witch were Riverside County Sheriff's Department Deputy Sheriffs Thomas and Horn.

THIRD AMENDED COMPLAINT FOR DAMAGES

of these men[6] were very heavy set and seemed a little nervous. He also noticed their scruffy appearance.

34.     PARNELL shook both men's[7] hands and introduced himself and then told them that he would get the Ditch Witch (752 locator) for them to see. The three of them came into the front living room where PARNELL had the Ditch Witch ready to show and demonstrate.

35.     The larger of the two men, was doing most of the talking while the other remained quiet and nervous. The larger man[8] had already asked PARENELL where he obtained the locator, and PARNELL told him[9] that he purchased the item from Roadrunner Construction Supply; a reputable construction equipment supply company.

36.     PARNELL also had the receipt for his purchase of said Ditch Witch tracker from Roadrunner Construction Supply on May 24, 2011, with him at his home; the subject residence complained of in this action, and would have produced the same for said defendant deputy sheriffs if they had simply inquired about the same.

37.     PARNELL began to feel uncomfortable and vulnerable, because he felt surrounded.  Then, the smaller man said, "This is exactly what I'm looking for."

---

[5] Riverside County Sheriff's Department Deputy Sheriffs David Horn and Robert Thomas and/or DOE(S) 1 and 2.
[6] DAVID HORN and/or  ROBERT THOMAS and/or DOE(S) 1 and 2.
[7] DAVID HORN and/or  ROBERT THOMAS and/or DOE(S) 1 and 2.
[8] DAVID HORN and/or  ROBERT THOMAS and/or DOE(S) 1 and 2.
[9] DAVID HORN and/or  ROBERT THOMAS and/or DOE(S) 1 and 2.

THIRD AMENDED COMPLAINT FOR DAMAGES

11

**Law Offices of Jerry L. Steering**

**Law Offices of Jerry L. Steering**

38.    The man[10] reached inside the neck of his T-shirt and pulled out something on a chain resembling a medallion or a badge, and told PARNELL that they were with the Riverside County Sheriff's Department. The larger man[11] never turned and faced PARNELL nor did he present a badge / medallion to him.

39.    The larger man[12] then informed PARNELL that the Ditch Witch 752 locator was stolen property and that he was going to have to handcuff him.

40.    At this point, PARNELL became scared and thought that this was a home-invasion robbery.

41.    Mr. Parnell had also fairly recently heard in the Media that there were people in the Lake Elsinore[13] area posing as police officers and robbing people in their homes. In fact, the "Press Enterprise" newspaper had published an article a few months prior to this incident, describing an incident in Lake Elsinore involving a group of people posing as police officers, and robbing people; said imposters dressed like defendants were that day.

42.    PARNELL took a couple steps backwards and said to the larger man[14], "Whoa, whoa, whoa, I am not buying this", and requested further identification that said man was really a police officer.

---

[10] DAVID HORN and/or  ROBERT THOMAS and/or DOE(S) 1 and 2.
[11] DAVID HORN and/or  ROBERT THOMAS and/or DOE(S) 1 and 2.
[12] DAVID HORN and/or  ROBERT THOMAS and/or DOE(S) 1 and 2.
[13] Or somewhat nearby area(s.)
[14] DAVID HORN and/or  ROBERT THOMAS and/or DOE(S) 1 and 2.

THIRD AMENDED COMPLAINT FOR DAMAGES

12

**Law Offices of Jerry L. Steering**

43.    The larger man[15], without saying anything or producing identification, grabbed PARNELL's hands.

44.    The smaller man[16] remained standing in the same place. Not believing that these men[17] were police officers / deputy sheriffs, PARNELL feared for his life, and pulled his hands away, and told said defendant that he wasn't "buying it" (the claim that they were police officers), and repeatedly asked said defendant for police identification.

45.    The larger man[18] then grabbed hold of PARNELL and started to physically throw him around the front room.

46.    Fearing for the safety of him and his girlfriend, Brenda Vu, PARNELL screamed to her to lock the bedroom door and shouted several times to call the police and to call "Shelley"; a personal friend of PARNELL'S who is a Riverside County Sheriff's Department Deputy Sheriff[19].

---

[15] DAVID HORN and/or ROBERT THOMAS and/or DOE(S) 1 and 2.
[16] DAVID HORN and/or ROBERT THOMAS and/or DOE(S) 1 and 2.
[17] DAVID HORN and/or ROBERT THOMAS and/or DOE(S) 1 and 2.
[18] DAVID HORN and/or ROBERT THOMAS and/or DOE(S) 1 and 2.
[19] To date defendants have refused to divulge to the plaintiffs some of the recordings, reports and other items of evidence. Most importantly, the defendants have not shown any documents showing that the either of the two Ditch Witch's of plaintiff PARNELL were alleged by defendants to have been stolen, to have been stolen, other than the words of defendant CORNETT on the (ambiguous, for an apparent reason) his search warrant affidavit (and on his arrest warrant information), that says that doesn't say how the two Detectives who informed him that the Ditch Witch first seized from the plaintiffs on June 10, 2011 (and that one surrendered to defendants by private investigators hired by PARNELL) , found out that the Ditch Witch's were stolen.

THIRD AMENDED COMPLAINT FOR DAMAGES

13

47.    PARNELL then screamed for help to his friend, MARELS, who was staying in the nearby room; yelling-out to MARELS that the men weren't real police. PARNELL shouted to MARELS, "They are not real cops, do not let him handcuff you."

48.    As PARNELL was being beaten he begged the men[20] to just take the items and leave.

49.    The larger man[21] was being so forceful with PARNELL that they were breaking PARNELL's furniture.

50.    The men[22] were not responding to PARNELL's repeated pleas to take the items and leave.  The men also refused to produce identification for PARNELL, notwithstanding his repeated pleas to do so.

51.    Eventually, the larger man[23] was able to place the handcuffs on PARNELL.

52.    PARNELL then heard MARELS exiting the bedroom in the house in which he had been sleeping, while the smaller man pulled out his gun and pointed it at MARELS.  The two men[24] were acting so unreasonably and aggressively, that PARNELL and MARELS were convinced that the two men[25] were not police officers.

53.    PARNELL shouted to MARELS, "they are not real cops, do not let him handcuff you."

---

[20] DAVID HORN and/or  ROBERT THOMAS and/or DOE(S) 1 and 2.
[21] DAVID HORN and/or  ROBERT THOMAS and/or DOE(S) 1 and 2.
[22] DAVID HORN and/or  ROBERT THOMAS and/or DOE(S) 1 and 2.
[23] DAVID HORN and/or  ROBERT THOMAS and/or DOE(S) 1 and 2.
[24] DAVID HORN and/or  ROBERT THOMAS and/or DOE(S) 1 and 2.
[25] DAVID HORN and/or  ROBERT THOMAS and/or DOE(S) 1 and 2.

THIRD AMENDED COMPLAINT FOR DAMAGES

14

54.    PARNELL believed that he was about to be killed and that his girlfriend would be raped. PARNELL began to shout for help for anyone who could hear.

55.    The larger man[26] continued to punch and kick PARNELL, while the smaller man[27] was beating-up MARELS. Neither of the defendant deputies showed their police identification to either of the plaintiffs.

56.    The man[28] then briefly let go of PARNELL[29], so PARNELL ran towards the door in order to cry for help and for someone to call the police.

57.    This seemed to enrage the larger man[30], as he did a leg sweep on PARNELL, causing him to fall violently to the floor.  The man[31] then picked up PARNELL and slammed him headfirst into the security screen; breaking and bloodying his nose.

58.    This reinforced to PARNELL that these two men[32] were not the police, as PARNELL did not know that the Riverside County Sheriff's Department actually treat people in such a brutal and despicable manner.

59.    PARNELL then was repeatedly punched and kicked by the larger man[33]. PARNELL could see blood coming from his nose and his nose felt broken.

60.    The man[34] momentarily stopped punching him and ran to MARELS.

---

[26] DAVID HORN and/or  ROBERT THOMAS and/or DOE(S) 1 and 2.
[27] DAVID HORN and/or  ROBERT THOMAS and/or DOE(S) 1 and 2.
[28] DAVID HORN and/or  ROBERT THOMAS and/or DOE(S) 1 and 2.
[29] Who was already handcuffed.
[30] DAVID HORN and/or  ROBERT THOMAS and/or DOE(S) 1 and 2.
[31] DAVID HORN and/or  ROBERT THOMAS and/or DOE(S) 1 and 2.
[32] DAVID HORN and/or  ROBERT THOMAS and/or DOE(S) 1 and 2.
[33] DAVID HORN and/or  ROBERT THOMAS and/or DOE(S) 1 and 2.

THIRD AMENDED COMPLAINT FOR DAMAGES

Law Offices of Jerry L. Steering

61.    PARNELL got to his knees and watched what was happening to MARELS, and PARNELL could see the smaller man throwing MARELS around the kitchen area.

62.   The larger man[35] then yelled "I just want to beat the living fucking shit out of you".  He[36] then ran across the room and punched PARNELL so hard that he temporarily lost consciousness.

63.    PARNELL then remembered believing that he and MARELS were going to be beaten to death and shot.  PARNELL then began to wonder when the pain will stop and death will begin and what it will be like to die.

64.   PARNELL then pleaded with the men[37] to just take the items and leave the home.

65.    PARNELL then saw a uniformed officer at the door and felt a huge sense of relief; that he was being rescued.  PARNELL believed that the men[38] were caught in the act and would be arrested.

66.    PARNELL asked the officer to arrest the men[39] at which time the officer chuckled and said, *"Why should I do that?  These are friends of mine!"*

67.    PARNELL and MARELS, both handcuffed, were then brought outside of the house by said defendants, and were sat down outside.

---

[34] DAVID HORN and/or ROBERT THOMAS and/or DOE(S) 1 and 2.
[35] DAVID HORN and/or ROBERT THOMAS and/or DOE(S) 1 and 2.
[36] DAVID HORN and/or ROBERT THOMAS and/or DOE(S) 1 and 2.
[37] DAVID HORN and/or ROBERT THOMAS and/or DOE(S) 1 and 2.
[38] DAVID HORN and/or ROBERT THOMAS and/or DOE(S) 1 and 2.
[39] DAVID HORN and/or ROBERT THOMAS and/or DOE(S) 1 and 2.

THIRD AMENDED COMPLAINT FOR DAMAGES

68.    By now several uniformed deputy sheriffs had arrived along with the fire department and paramedics.

69.    Once the paramedics arrived, the larger man[40] waved them away and told them that they did not need to be treated.

70.    PARNELL and MARELS were then transported to the Riverside County Sheriff's Department, Lake Elsinore Substation, and were never told why they had been arrested.

71.    Several police officers remained at the house, including defendants FLANNERY, TITUS and DOES 1 through 4, inclusive, and searched plaintiff PARNELL'S home, above-referenced, and search and photographed many of the items contained therein; including the other Ditch Witch locator that PARNELL owned (a model 750; serial number 069834), without a warrant, consent or an emergency.

72.    Moreover, when PARNELL yelled out for his girlfriend, Brenda Vu, to call the police (and "Shelley"), she hid inside of their bedroom closet and called "911". While on the telephone with the "911" dispatcher from the Riverside County Sheriff's Department Ms. Vu explained that there were unidentified men in the house who were fighting with her boyfriend, PARNELL, and to please send the police to plaintiff's home right away.

---

[40] DAVID HORN and/or  ROBERT THOMAS and/or DOE(S) 1 and 2.

THIRD AMENDED COMPLAINT FOR DAMAGES

17

**Law Offices of Jerry L. Steering**

73.     After the beatings of the plaintiffs, above-referenced, had stopped,  the "911" dispatcher from the Riverside County Sheriff's Department told Ms. Vu that the men were deputy sheriffs, and that she should go outside of the bedroom and make contact with them.

74.     Ms. Vu then did so, and asked said defendants what was going on.

75.     Ms. Vu was then told by deputy(ies) Thomas and/or Horn and/or DOES 1-6, inclusive, that the Ditch Witch was stolen property, and she told them that it was not, and that PARNELL purchased the subject Ditch Witch 752 locator at Roadrunner Construction Supply.

76.     Deputy(ies) Thomas and/or Horn and/or DOES 1 – 6, inclusive, then asked Ms. Vu if the receipt for the purchase of said Ditch Witch 752 locator from Roadrunner Construction Supply was at the residence / scene, and she told him/them that she kept the receipts for all of the purchases, and that she had the receipt at said residence / scene. However, Deputy(ies) Thomas and/or Horn and/or DOES 1 – 6, inclusive, didn't ask to see the receipt for the purchase of said Ditch Witch 752 locator from Roadrunner Construction Supply.

77.     Ms. Vu was also ordered by said deputies to sit outside, and she was detained there by said deputies, above-referenced, for approximately one hour.

78.     PARNELL and MARELS were thereafter transported to the Riverside County Jail in Murrieta, California, and booked and incarcerated there.

THIRD AMENDED COMPLAINT FOR DAMAGES

80.    PARNELL and MARELS were then released on citations for violation of Cal. Penal Code § 148(a)(1) (resisting peace officer) at approximately 2:00 a.m. on July 11, 2011.

81.    Although both plaintiffs were cited for violating Cal. Penal Code § 148(a)(1), neither of the plaintiffs were cited for possession of stolen property, as neither the Ditch Witch 752 that said defendants told plaintiffs was stolen during said June 10, 2010 incident complained of in this action, nor the Ditch Witch 750, mentioned  below (serial number 069834; the other Ditch Witch tracker in plaintiff's residence) were stolen, or showed-up on any stolen property data bases as stolen.

82.    Furthermore, PARNELL and his counsel have repeatedly shown to the Riverside County Sheriff's Department that the Ditch Witch's in question were legitimately purchased by PARNELL, that PARNELL had no knowledge that any of the Ditch Witches were stolen[41], and, in fact, that said Ditch Witch's were not stolen.

83.    PARNELL and his counsel fully cooperated with the Riverside County Sheriff's Department in their investigation of said allegedly stolen Ditch Witch locators, including "surrendering" a Ditch Witch 750 locator (serial number 069834) that said defendants allege to be stolen, and providing defendant CORNETT with plaintiffs' ebay

---

[41] Riverside County Sheriff's Department Investigator Robert Cornett alleges that the ditch witches in question are stolen, However, Ditch Witch does not have any of PARNELL's current or former Ditch Witch trackers on their list of reported stolen devices.

THIRD AMENDED COMPLAINT FOR DAMAGES

19

and email communications regarding said Ditch Witch locators associated with him[42], as well as with various receipts and bills of sale.

84.    But for the search warrant having issued for said Ditch Witch 750 locator (serial number 069834), and but for plaintiffs' counsel being made aware that said locator was named as property to seize pursuant to the search warrant that CORNETT and DOES obtained for the plaintiff's home, above-referenced, PARNELL would not have had delivered and surrendered said locator to the Riverside County Sheriff's Department.

85.    However, notwithstanding Ditch Witch 750 locator (serial number 069834) not being stolen, PARNELL nonetheless obeyed the commandment of said search warrant, and had surrendered said Ditch Witch 750 locator (serial number 069834) to the Riverside County Sheriff's Department.

86.    The actions of said defendants THOMAS, HORN, and DOES 1 through 6, inclusive, as complained of herein, constitute a violation of plaintiffs' rights under the Fourth Amendment to the United States Constitution to be free from the use of unlawful, unreasonable and excessive force on their persons by said defendants.

87.    As a direct and proximate result of the actions of defendants, and each of them, as complained of herein, plaintiffs PARNELL and MARELS: 1) were substantially physically, mentally and emotionally injured; 2) incurred medical and psychological costs, bills and expenses; 3) incurred the loss of / loss of use of PARNELL'S personal

---

[42] By CORNETT.

THIRD AMENDED COMPLAINT FOR DAMAGES

Law Offices of Jerry L. Steering

property, especially said Ditch Witch 750 locators, and 4)   incurred other special and

general damages, including attorney's fees, investigator fees and associated litigation

costs and expenses; all in an amount to be proven at trial;  is in excess of $5,000,000.00.

88.    The actions of said defendants, and each of them, as complained of herein,

were committed maliciously, oppressively and in reckless disregard of PARNELL's and

MARELS' constitutional rights, sufficient for an award of punitive / exemplary damages

against defendants THOMAS, HORN, and DOES 1 through 6, inclusive, in an amount to

be proven at trial which is in excess of $3,000,000.00.

SECOND CAUSE OF ACTION
VIOLATION OF 42 U.S.C. § 1983
Violation of Fourth Amendment Rights
Unlawful / Unreasonable Seizure of Person
(By All Plaintiffs Against Defendants CORNETT, THOMAS, HORN, FLANNERY,
and DOES 1 through 6, inclusive)

89.    Plaintiffs hereby reallege and incorporates by reference the allegations set

forth in paragraphs 1 through 88, inclusive, above, as if set forth in full herein.

90.    As complained of herein above, none of the defendants to this action had

either a warrant for PARNELL or MARELS' arrest, or probable cause to believe that

PARNELL or MARELS had committed a crime, or reasonable suspicion that PARNELL

or MARELS were a danger to anyone or anything, or even a reasonable suspicion of

criminality afoot by PARNELL or MARELS.

91.    As shown above, defendants THOMAS, HORN and DOES 1 through 6,

inclusive, inquired of PARNELL and of Ms. Vu, as to from where and when PARNELL

THIRD AMENDED COMPLAINT FOR DAMAGES

21

**Law Offices of Jerry L. Steering**

obtained said Ditch Witch 752 locator (serial number 8281296), and as shown above, PARNELL and Ms. Vu told said defendants that PARNELL purchased said Ditch Witch 752 locator (serial number 8281296) from a reputable local dealer; Roadrunner Construction Supply, and, that they had the receipts for said purchase at plaintiff's home.

92.    Moreover, at the time that THOMAS, HORN and DOES 1 through 4, inclusive, arrested the plaintiffs at plaintiff PARNELL's house, above-referenced, on June 10, 2011, neither of the Ditch Witch trackers / locators had been reported or otherwise listed as stolen, and CORNETT,  THOMAS and HORN and DOES 1 through 4, inclusive, knew that.

93.    Moreover, said defendants actually suspected PARNELL of buying and selling Ditch Witch trackers / locators to drug addicts and criminals, for use  by them in locating metal beneath the ground, for sale as scrap metal. Moreover, FLANNERY, TITUS took the plaintiffs to jail, and had input in the decision to arrest them.

94.    Moreover, said defendants actually unreasonably suspected PARNELL of being a "tweeker"[43], and subjected PARNELL to a drug test at the Riverside County Sheriff's Department; the results of said drug test being negative for all tested illicit substances; especially for methamphetamine.

95.    CORNETT was one of the detectives with the Riverside County Sheriff's Department who investigated the local theft of buried metals, he instigated, requested,

_____

[43] A commonly used term for a person who frequently uses methamphetamine.

THIRD AMENDED COMPLAINT FOR DAMAGES

Law Offices of Jerry L. Steering

**Law Offices of Jerry L. Steering**

encouraged or otherwise caused and directed THOMAS, HORN and DOES 1 through 4, inclusive, to go to the plaintiffs' home on June 10, 2011, and to arrest PARNELL; notwithstanding them knowing that PARNELL (and derivatively, MARELS) had no reasonable knowledge or belief that either or any of said Ditch Witch trackers / locators were stolen, and notwithstanding said defendants knowing that since said 752 Ditch Witch locator was not listed or shown as stolen in any data base, including the Ditch Witch corporate data base for stolen Ditch Witch items.

96.    Moreover, the 752 Ditch Witch locator (serial number 8281296) that the defendants were at plaintiff's home to do a pretext purchase of, was not even stolen at all.

97.    Therefore, said defendants could not have reasonably believed that either of the plaintiffs either stole the 752 Ditch Witch locator, or knew, or reasonably should have known, that it had been stolen.

98.    Moreover, it was obvious to defendants THOMAS, HORN, CORNETT, FLANNERY and DOES 1 through 6, inclusive, and it would have been obvious to any reasonably well trained peace officer, that the plaintiffs committed no crime at all, and that any confusion by the plaintiffs about whether HORN, THOMAS and DOES 1 through 6, inclusive, were peace officers, was caused by said defendants' own misfeasance, malfeasance and otherwise wrongful conduct, in dressing themselves in a manner for the very purpose of not appearing as peace officers, and then refusing to show

to plaintiffs their Riverside County Sheriff's Department identification card, that they could have easily taken out and shown the plaintiff within (approximately) 2 seconds.

99.  Therefore, the actions by THOMAS, HORN, CORNETT, FLANNERY and DOES 1 through 6, inclusive, constituted a violation of said plaintiffs' right to be free from the arrests of their persons in the absence of probable cause to believe that they had committed a crime, and in the absence of criminality afoot to have detained said plaintiffs under the Fourth Amendment to the United States Constitution.

100.   As a direct and proximate result of the actions of defendants, and each of them, as complained of herein, plaintiffs PARNELL and MARELS: 1) were substantially physically, mentally and emotionally injured; 2) incurred medical and psychological costs, bills and expenses; 3) incurred the loss of / loss of use of PARNELL'S personal property, especially said Ditch Witch 750 locator (serial number 069834), and 4) incurred other special and general damages, including attorney's fees, investigator fees and associated litigation costs and expenses; all in an amount to be proven at trial;  is in excess of $5,000,000.00.

101.   The actions of said defendants, and each of them, as complained of herein, were committed maliciously, oppressively and in reckless disregard of PARNELL's and MARELS' constitutional rights, sufficient for an award of punitive / exemplary damages against defendants THOMAS, HORN, FLANNERY, CORNETT and DOES 1 through 6, inclusive, in an amount to be proven at trial which is in excess of $3,000,000.00.

THIRD AMENDED COMPLAINT FOR DAMAGES

24

Law Offices of Jerry L. Steering

### THIRD CAUSE OF ACTION

VIOLATION OF 42 U.S.C. § 1983
Violation Of Fourth Amendment Rights
Unreasonable / Unlawful Entry Into And Search and Seizure of Private Residence;
Incident Of June 10, 2011
(By All Plaintiffs Against Defendants CORNETT, THOMAS, HORN, TITUS,
DEANNE, FLANNERY, CALLAHAN and DOES 1 through 10, inclusive)

98.    Plaintiffs hereby reallege and incorporates by reference the allegations set forth in paragraphs 1 through 97, inclusive, above, as if set forth in full herein.

99.    CORNETT, HORN, THOMAS, TITUS, DEANNE, FLANNERY, CALLAHAN and DOES 1 through 6, inclusive, were apparently involved in / doing some type of drug / drug addict related area of police work.

100.    CORNETT, HORN, THOMAS and DOES 1 through 6, inclusive, believed that drug addicts often steal or purchase Ditch Witch locators / trackers, such as those at issue in this case, so they can use them to locate copper and other subterranean metals, to sell as scrap, to finance their drug habits.

101.    This was a belief commonly held by the investigatory and supervisory staff at said Lake Elsinore Sheriff's Department substation during those material times complained of in this action, and, most likely, had some substantial degree of truth to it. CORNETT, HORN, THOMAS and DOES 1 through 6, inclusive, shared those beliefs, and acted based on those beliefs.

102.    Moreover, it was widely believed by the investigatory and  supervisory staff at said Lake Elsinore Sheriff's Department substation during those material times

complained of in this action, and otherwise by the courts and the public, that the Lake Elsinore area harbors a disproportionately large number of parolees and drug addicts, and it likely that in the business of fighting rampant drug manufacturing, drug trafficking and widespread drug abuse, that the Constables may get a little too zealous in the performance of their duties.

103.   During the June 10, 2011 incident complained of in this action, THOMAS, HORN, COLE, SIMON, TITUS and FLANNERY searched the plaintiff's home; above-referenced. This searching including opening-up the closed carrying case for said Ditch Witch 750 locator / tracker that was in the plaintiffs' house (and that belonged to PARNELL), and copying-down the serial number for said Ditch Witch 750 locator / tracker; 069834.

104.   These actions by said defendants in searching the plaintiff's home, above-referenced, were done without of warrant, consent or an emergency; all in violation of both plaintiffs' rights under the Fourth Amendment to the United States Constitution[44].

105.   As a direct and proximate result of the actions of defendants, and each of them, as complained of herein, plaintiffs PARNELL and MARELS: 1) were substantially physically, mentally and emotionally injured; 2) incurred medical and psychological costs, bills and expenses; 3) incurred the loss of / loss of use of PARNELL'S personal property, especially said Ditch Witch 750 locator (serial number 069834), and 4)

---

[44] Plaintiff MARELS' right to privacy in said residence was due to his status as a temporary resident and overnight guest at the house.

THIRD AMENDED COMPLAINT FOR DAMAGES

incurred other special and general damages, including attorney's fees, investigator fees and associated litigation costs and expenses; all in an amount to be proven at trial;  is in excess of $5,000,000.00.

106.    The actions of said defendants, and each of them, as complained of herein, were committed maliciously, oppressively and in reckless disregard of PARNELL's and MARELS' constitutional rights, sufficient for an award of punitive / exemplary damages against defendants THOMAS, HORN, and DOES 1 through 6, inclusive, in an amount to be proven at trial which is in excess of $3,000,000.00.

<u>FOURTH CAUSE OF ACTION</u>
VIOLATION OF 42 U.S.C. § 1983
Violation Of Fourth Amendment Rights
Unreasonable / Unlawful Entry Into And Search and Seizure of Private Residence;
Incident Of July 7, 2011
(By All Plaintiffs Against Defendants CORNETT, THOMAS, HORN
and DOES 1 through 10, inclusive)

107.    Plaintiffs hereby reallege and incorporates by reference the allegations set forth in paragraphs 1 through 106, inclusive, above, as if set forth in full herein.

108.        On or about July 6, 2011, pursuant to a conspiracy between CORNETT, THOMAS, HORN, CORNETT and DOES 1 through 6,  and in furtherance thereof, CORNETT and DOES 1 through 3, authored the following search warrant / search warrant application and affidavit in support of the same, for the search of and seizure of property from plaintiff PARNELL's home, located at 18458 Eucalyptus Avenue, Lake Elsinore, CA 92532, in the County of Riverside.

THIRD AMENDED COMPLAINT FOR DAMAGES
27

Law Offices of Jerry L. Steering

109.   Said conspiracy was prompted as it was widely believed by the investigatory and  supervisory staff at said Lake Elsinore Sheriff's Department substation during those material times complained of in  this action, and otherwise by the courts and the public, that the Lake Elsinore area harbors a disproportionately large number of parolees and drug addicts, and it likely that in the business of fighting rampant drug manufacturing, drug trafficking and widespread drug abuse, that the Constables may get a little too zealous in the performance of their duties.

110.   Also as shown above, the conspiracy was prompted because said defendants believed that drug addicts often steal or purchase Ditch Witch locators / trackers, such as those at issue in this case, so they can use them to locate copper and other subterranean metals, to sell as scrap, to finance their drug habits.

111.   The Constable's discretion is, of course, limited by the rights that are, as a practical matter[45], proscribed by statutory and constitutional constraints.

112.      Said defendants knew those constitutional boundaries, but nonetheless stepped out-of-bounds by conspiring to use the pretext of a search for an alleged stolen Ditch Witch 752 locator (serial number 069834), to do a more comprehensive investigation of drug activity and thefts associated therewith in the Lake Elsinore area.

113.   The search warrant authored on July 6, 2011, above-referenced, was for the seizure of a Ditch Witch 750 tracker / locator, serial number 069834, that plaintiff

---

[45] For every wrong, there is not a remedy.

THIRD AMENDED COMPLAINT FOR DAMAGES

28

Law Offices of Jerry L. Steering

PARNELL purchased from a James W. Painter of Louisville, Kentucky, on eBay.com on September 17, 2009, via *PayPal.*[46]

114.   On July 7, 2011, said defendants executed said search warrant at plaintiff PARNELL's home, located at 18458 Eucalyptus Avenue, Lake Elsinore, CA 92532, in the County of Riverside.

115.   At the time that said Ditch Witch 750 locator (serial number 069834) was purchased by PARNELL from James W. Painter, said Ditch Witch 750 tracker / locator was not listed with any police agency or with any private reporting service, including Ditch Witch Corporation, the manufacturer, as stolen.

116.   In support of the issuance of said search warrant, CORNETT and DOES 1 through 3, inclusive, showed the Riverside County Superior Court Judge the following, in support of his/their application for a search warrant of plaintiff's home for the Ditch Witch 750 (Serial Number 069834):

*"YOUR AFFIANT RECEIVED INFORMATION AS FOLLOWS:*

*On 06-01-2011 Deputies Horn and Thomas of the Riverside County Sheriff's Department, Lake Elsinore Station Burglary Suppression Team, received information that David Parnell was selling a stolen Ditch Witch Tracker 750 on eBay, with a serial number of 8281296. Deputy Horn and Thomas confirmed the Ditch Witch Tracker 750 was stolen by going to the house and posing as buyers for the item; once inside the house they confirmed the serial number on the Ditch Witch Tracker to match the listed stolen item. David Parnell was arrested for possession of stolen property.*

---

[46] *See*, attached Exhibit "C"; a copy of said PayPal sales transaction of September 17, 2009.

THIRD AMENDED COMPLAINT FOR DAMAGES

*While inside the house Deputies located a second Ditch Witch Tracker 750. This
second Ditch Witch 750 was inside a black carrying case, on the floor of the living
room area where they were, and the carrying case was open with the Ditch Witch
750 in plain sight. During their investigation into the first stolen item Deputies
Horn and Thomas copied down the serial number on the second Ditch Witch
Tracker 750 as 069834. On the day of this arrest they conducted a computer check
on the serial number and at the time it was not listed as stolen. Deputies Horn and
Thomas then left the house leaving the second Ditch Witch Tracker inside. Upon
returning to the Lake Elsinore Station they contacted Billy Lenberger, the sales
representative from Ditch Witch of Kentucky, and asked him about the Ditch Witch
Tracker, with serial number 069834. Billy Lenberger stated his company in
Kentucky sold that item to the Southern Pipeline Construction Company in
February of 2000. Billy Lenberger stated the representative from Southern Pipeline
Construction Company was Stephen Mullins. Deputies Horn and Thomas were not
able to get a hold of Stephen Mullins so the investigation was handed off to me to
complete. Once I received the investigation I contacted Stephen Mullins and talked
with him about the Ditch Witch Tracker 750 he had purchased. He confirmed he
had purchased the item in 2000 from Billy Lenberger in Kentucky. Stephen
Mullins said he checked his stock for the Ditch Witch 750, with the serial number
of 069834, and he could not find the item; he did say the carrying case to the
tracker was in his office but the tracker itself was not in the carrying case. I asked
Stephen Mullins if his company rented equipment to other companies or people and
he said no. Stephen Mullins stated his company, and his employees, are the only
people who have permission to be in possession of the item and he did not know
how it would have gotten to Riverside County. I asked Stephen Mullins if David
Parnell, the person was arrested by Deputies Horn and Thomas, had ever been
employed by his company. Stephen said in the forty years of being employed by
Southern Pipeline Construction Company he has never heard the name of David
Parnell as being an employee of the company. Stephen Mullins told me to contact
Beverly Global, the Human Resources Manger for the company and confirmed it
with her. I contacted Beverly Global and she confirmed that David Parnell has
never worked for the company and would have no reason to be in possession of any
item that belonged to Southern Pipeline Construction Company. Stephen Mullins
stated he desired prosecution of anyone that was in possession of his stolen Ditch
Witch Tracker 750. After talking with Stephen Mullins I contacted Billy Lenberger
and asked him about the sale of this particular Ditch Witch Tracker 750. Billy
Lenberger stated he remembered the transaction because Southern Pipeline
Construction Company is a regular customer of his. Billy Lenberger said he would
find the receipt for the transaction and fax it to. About one hour later I received a*

THIRD AMENDED COMPLAINT FOR DAMAGES

30

**Law Offices of Jerry L. Steering**

*fax from Billy Lenberger. The fax was a copy of the invoice showing Billy Lenberger selling Southern Pipeline Construction Company a Ditch Witch Tracker 750, with the serial number of 069834. This receipt showed the sale of this item in February of 2000."*

117.   In fact, the statement,

> *"On 06-01-2011 Deputies Horn and Thomas of the Riverside County Sheriff's Department, Lake Elsinore Station Burglary Suppression Team, received information that David Parnell was selling a stolen Ditch Witch Tracker 750 on eBay, with a serial number of 8281296. Deputy Horn and Thomas confirmed the Ditch Witch Tracker 750 was stolen by going to the house and posing as buyers for the item; once inside the house they confirmed the serial number on the Ditch Witch Tracker to match the listed stolen item. David Parnell was arrested for possession of stolen property."*

is false, and was knowingly made false by CORNETT. Nothing that said defendants discovered at the plaintiffs house showed that the Ditch Witch (#8281296) was stolen. Moreover, nothing in defendant CORNETT'S Statement Of Probable Cause ("Affiant's Declaration" here) provides any grounds for a Judge to make any independent determination that said Ditch Witch 752 locator (#8281296) was stolen; nothing other than a bald conclusory assertion by CORNETT, unsupported by any facts.

118.   Moreover, the characterization of said Ditch Witch 752 locator (#8281296) as a *"listed stolen item",* is false, and was knowingly made false by CORNETT, as said locator was never listed as stolen, and, to this day, is still not listed as stolen.

119.   Moreover, it also was not a 750, but a 752; the model number of the locator that was the target of the search warrant and search warrant execution of July 7, 2011.

120.   The statement:

THIRD AMENDED COMPLAINT FOR DAMAGES

Law Offices of Jerry L. Steering

*"While inside the house Deputies located a second Ditch Witch Tracker 750. This second Ditch Witch 750 was inside a black carrying case, on the floor of the living room area where they were, and the carrying case was open with the Ditch Witch 750 in plain sight. During their investigation into the first stolen item Deputies Horn and Thomas copied down the serial number on the second Ditch Witch Tracker 750 as 069834."*

is false. THOMAS, HORN, TITUS, DEANNE and CALLAHAN opened-up the closed Ditch Witch 750 carrying case and moved the item outside of its position in the carrying case, to see the serial number, and to take photos of the locator. Moreover, defendants THOMAS, HORN, TITUS, DEANNE and CALLAHAN searched the plaintiff's home without a warrant, including Ditch Witch Tracker 750 (#069834), after plaintiffs had been arrested, and then after said plaintiffs had been taken to jail.

120.   Moreover, PARNELL was not arrested for possession of stolen property. He had his receipts for the purchase of the 752 Ditch Witch that he was selling, and the defendants never seriously contended that PARNELL should have had any belief that the 752 Ditch Witch that he was selling (#8281296), that he purchased (with proof) from a legitimate construction supply store, was stolen.

121.   The government so little believed that plaintiffs were guilty of knowingly possessing stolen property, that the Notices To Appear in court that were issued to both plaintiffs, were for violations of Cal. Penal Code § 148(a)(1) (resisting / delaying / obstructing officer) only; not for possession of stolen property (Cal. Penal Code § 496.)

122.   Moreover, when, on June 10, 2011, after Ms. Vu told exited her bedroom and was told that the Ditch Witch 752 locator that PARNELL was selling (#8281296)

THIRD AMENDED COMPLAINT FOR DAMAGES

Law Offices of Jerry L. Steering

was stolen, she told defendants THOMAS, HORN and DOES that it wasn't stolen, that

PARNELL purchased said locator at Roadrunner Construction Supply, and that she had

the receipt for the purchase of said Ditch Witch 752 locator (#8281296), there at

plaintiff's home, and that she could produce the receipt for the deputies. In response to

that statement, defendants THOMAS, HORN and DOES didn't ask to see the receipt or

ask for any copies of the same, but rather left the premises; apparently not wanting to hear

the bad news; that the plaintiffs were innocent of possessing any stolen property.

123.   About an hour or two after the deputies all left the plaintiff's home, Ms. Vu

received a telephone call from defendant(s) THOMAS and/or HORN and/or DOES;

asking her if she could provide to him/them a copy of the purchase receipt for the Ditch

Witch 752 locator (#8281296) that the defendants seized from PARNELL on June 10,

2011, above-referenced. Ms. Vu told him/them that she had located the purchase receipt

for said Ditch Witch 752 locator (#8281296), and that because her car was disabled, that

she could not bring it to the Sheriff's Department. However, she offered to wait for the

Sheriff's Department to come by the house and to provide the receipt to the Sheriff's

Department when they came that day.

124.   Although defendant(s) THOMAS and/or HORN and/or DOES told her that

they would be sending someone from the Sheriff's Department over to plaintiff's house

(where Ms. Vu also resided) to pick the receipt up from Ms. Vu, no one ever came, and

the sales receipt for Ditch Witch 752 locator (#8281296)  was never obtained by the

Sheriff's Department' at least until the search warrant execution at the plaintiff's home on July 7, 2012, complained of in this action. During the afternoon of June 10, 2011, Ms. Vu even called the Sheriff's Department deputies to ask if they were still coming over to plaintiff's home to pick-up said sales receipt for said Ditch Witch 752 locator (#8281296), and she was told "Yes", but no one came to her / plaintiff's home to get the receipt, until they did so during the July 7, 2011 search warrant execution, also complained of in this action.

125.   Moreover, although the statements in the affidavit for the search warrant ("Affiant's Declaration"), about the discussions with Mr. Stephen Mullins in Kentucky[47] about the Ditch Witch 750 locator (#069834; the subject of the July 7, 2011 search warrant execution) are apparently somewhat true, plaintiffs, through their lawyer, Jerry L. Steering, was communicating with CORNETT and other deputies at the Lake Elsinore substation of the Sheriff's Department, offering full cooperation and any information that the Sheriff's Department desired, and any reasonable investigation / inquiry whatsoever by defendants about how PARNELL acquired the Ditch Witch 750 locator (#069834) that was the target of the search warrant obtained by CORNETT and DOES on July 6, 2011[48], would have shown any reasonably competent peace officer that said 750 Ditch Witch locator (#069834) wasn't stolen, and that even if it would have been, that there's no way that PARNELL could have possibly known that.

---

[47] Of Southern Pipeline Construction Company.
[48] And that was executed on July 7, 2011 at the plaintiff's home.

THIRD AMENDED COMPLAINT FOR DAMAGES

Law Offices of Jerry L. Steering

126.   If CORNETT, THOMAS, HORN and DOES would have simply asked PARNELL from where and when he had obtained said Ditch Witch 750 locator (#069834)[49], PARNELL would have shown said defendant deputys(ies) that he bought it on eBay from James W. Painter of Louisville, Kentucky; the owner, President and agent for service of process of Intertech, Inc.;  a Kentucky Corporation[50], that is somehow related to Southern Pipeline Construction Company, and is in the same type of pipeline construction business[51]; the alleged "victim" / "true owner" of Ditch Witch 750 locator (#069834[52].)

127.   If CORNETT, THOMAS, HORN and DOES would have simply asked PARNELL from where and when he had obtained said Ditch Witch 750 locator (#069834), they would have seen that PARNELL purchased said locator from James W. Painter via ebay / *PayPal* for $2,700.00 on September 17, 2009 (*See*, attached Exhibit "C"); a copy of the Sales Receipt for PARNELL'S purchase of said Ditch Witch 750

---

[49] The 750 locator also surrendered by the plaintiffs to the Sheriff's Department pursuant to the bogus search warrant therefor.

[50] *See*, attached Exhibit "D"; a copy of documents from the Kentucky Secretary of State's Office, showing that James W. Painter of Louisville, Kentucky, was the owner, President and agent for service of process of Intertech, Inc.; a Kentucky Corporation in the same type of pipeline construction business as Southern Pipeline Construction.

[51] See, attached Exhibit "E"; copy of internet Kentucky business listings for Intertech, Inc and for Southern Pipeline Construction Company, showing that they are related companies, in the same business in Louisville, Kentucky.

[52] *See*, attached Exhibit "D"; a copy of documents from the Kentucky Secretary of State's Office, showing that James W. Painter of Louisville, Kentucky, was the owner, President and agent for service of process of Intertech, Inc.; a Kentucky Corporation in the same type of pipeline construction business as Southern Pipeline Construction.

THIRD AMENDED COMPLAINT FOR DAMAGES

Law Offices of Jerry L. Steering

locator (#069834[53].) Moreover, If CORNETT, THOMAS, HORN and DOES would have simply asked PARNELL from where and when he had obtained said Ditch Witch 750 locator (#069834), he/they would have learned, upon any reasonable inquiry (i.e. thirty second Google / Google map search), that the seller of the locator to PARNELL, James W. Painter of Louisville, Kentucky was the owner, President and agent for service of process of Intertech, Inc.; a Kentucky Corporation in the same type of pipeline construction business as Southern Pipeline Construction Company, the alleged "victim" / "true owner" of Ditch Witch 750 locator (#069834), and is somehow related to that company. Said defendants would have also learned that Intertech, Inc. is located at 4050 Tower Road, Louisville, KY 40219; a location that is literally right behind Southern Pipeline Construction[54] (also of Louisville, Kentucky), the alleged "victim" and "true owner" of Ditch Witch 750 Serial Number 069834[55] (*See*, attached Exhibit "B"; a Google maps showing driving directions from James W. Painter's company, Intertech Inc.[56]

---

[53] Another items that PARNELL had at his home, above-referenced, that he would have shown said defendants if they had made any such inquiry.

[54] Also of Louisville, Kentucky. Southern Pipeline Corporation is located at 1272 Old Fern Valley Road, Okolona, KY40219; right behind Intertech, Inc.'s facilities.

[55] In fact, in a supplemental report by CORNETT, he states that he was told by Mr. Mullins of Southern Pipeline Corporation, that Intertech Inc. is a construction company that is on the street right in back of the Southern Pipeline Corporation premises; a fact omitted from CORNETT'S "Affiant's Declaration."

[56] Intertech Inc., 4050 Tower Road, Louisville, KY 40219.

THIRD AMENDED COMPLAINT FOR DAMAGES

36

(shown as Green inverted tear drop "B" on Exhibit "B") to Southern Pipeline Construction Company[57] (shown as Green inverted tear drop "A" on Exhibit "B".)

128.   CORNETT also stated in one of his supplemental reports that he tried to contact James W. Painter, but wasn't able to do so. This is a false statement, in the sense that a thirty second Google search would have located him, and it was patently unreasonable not to have been able to contact him. Any reasonably well training peace officer would have at least made contact with Mr. Painter, who was the agent for service of process for the company that he was the owner and President of; Intertech, Inc.

129.   In all likelihood, CORNETT, THOMAS, HORN and DOES was/were either not so zealous about pursuing a discussion with Mr. Painter (i.e. too exculpatory for PARNELL), or, had discussions with him; presently not disclosed to the plaintiffs (i.e. too exculpatory for PARNELL.[58]) However, again, a thirty second Google search would have located him, and it was patently unreasonable not to have been able to contact him.

130.   Moreover, the Ditch Witch 750 locator sought in the search warrant (serial number 069834) was a ten year old piece of construction equipment that went unnoticed in a large company like Southern Pipeline. Moreover, as the sales receipt for PARNELL'S purchase of said Ditch Witch 750 locator (serial number 069834) shows that PARNELL bought said locator in September of 2009, and that CORNETT claims

---

[57] Located at 1272 Old Fern Valley Road, Okolona, KY40219; right behind Intertech, Inc.'s facilities.

[58] Plaintiff indulges CORNETT with the former explanation.

THIRD AMENDED COMPLAINT FOR DAMAGES

Law Offices of Jerry L. Steering

that Mr. Mullins from Southern Pipeline didn't know that the subject locator had been gone for almost two years, it was unreasonable to assume that it was stolen at all.

131.    CORNETT, THOMAS, HORN and DOES believed (unreasonably) these sales and payment receipts all show that PARNELL bought and sold several Ditch Witch's in the past few months, so they thought that he must be a criminal. Defendants' CORNETT, THOMAS, HORN and DOES were overly presumptuous in their speculation as to PARNELL being affiliated with the drug business, and likely hoping for days of police glory, for popping the big one.

132.    PARNELL has all of the sales receipts and payments for said locator(s) / trackers, it would have been obvious to any reasonably well trained peace officer that, under the circumstances, PARNELL  was not buying or selling or possessing (at least knowingly) stolen items, or had stolen the items.

133.    Nonetheless, apparently knowing that their speculation would not withstanding judicial scrutiny, CORNETT, pursuant to his agreement and understanding to work in concerted action with, to cooperate with, and to aid and abet CORNETT, THOMAS, HORN and DOES invasion of the plaintiffs' home, obtained (on July 6, 2011) and executed said search warrant for and at PARNELL'S home, above-referenced, on July 7, 2011.

134.    When said defendants executed said search warrant at PARNELL'S home, above-referenced, on July 7, 2011, the sought-after (in the warrant) Ditch Witch 750

THIRD AMENDED COMPLAINT FOR DAMAGES

38

*Law Offices of Jerry L. Steering*

(serial number 069834) was not there; neither was PARNELL. He was already at work

with his locator.

135.   Nonetheless, said above-referenced deputies search through the plaintiffs

home, and even took possession of their attorney-client communications; their statements

prepared for plaintiffs' counsel regarding the June 10, 2010 incident complained of in this

action, as well as downloaded the plaintiffs' computers (as well as seizing receipts and

other documents and items; one of which was the sales receipt for PARNELL'S purchase

of Ditch Witch 752 #8281296.)

136.   Moreover, defendants gained knowledge of the 750 Ditch Witch's serial

number (#069834) by the illegal moving and viewing of the same on June 10, 2010;

above-described.

137.   There is nothing in the search warrant about either the officer's personal

beliefs, or independent facts upon which a neutral and detached magistrate could evaluate

the basis for the issuance of a search warrant for the plaintiffs' home. CORNETT'S

THOMAS', HORN'S and DOES' knowledge or sources, were not discussed in the search

warrant application. The Judge should not have simply taken said defendants words for

the key material facts about the items sought.

138.   Accordingly, the plaintiffs' rights to be free from an unlawful and

unreasonable search of his / their house was violated under the Fourth Amendment to the

United States Constitution, as no probable cause existed for the issuance of said search

Law Offices of Jerry L. Steering

warrant, or to take from PARNELL an invaluable business tool; the Ditch Witches; without which he could not function in the drilling business (and which put PARNELL out of business for some time.) Moreover, but for the above-referenced material false statements of fact and omissions of material facts, the Judge would not have issued said search warrant for the plaintiffs' home.

139.   As a direct and proximate result of the actions of defendants, and each of them, as complained of herein, plaintiffs PARNELL and MARELS: 1) were substantially physically, mentally and emotionally injured; 2) incurred medical and psychological costs, bills and expenses; 3) incurred the loss of / loss of use of PARNELL'S personal property, especially said Ditch Witch 750 locator (serial number 069834), and 4) incurred other special and general damages, including attorney's fees, investigator fees and associated litigation costs and expenses; all in an amount to be proven at trial;  is in excess of $5,000,000.00.

140.   The actions of said defendants, and each of them, as complained of herein, were committed maliciously, oppressively and in reckless disregard of PARNELL's and MARELS' constitutional rights, sufficient for an award of punitive / exemplary damages against defendants CORNETT, THOMAS, HORN and DOES 1 through 6, inclusive, in an amount to be proven at trial which is in excess of $3,000,000.00.

<u>FIFTH CAUSE OF ACTION</u>
Violation of Cal. Civil Code § 52.1
Under California State Law

THIRD AMENDED COMPLAINT FOR DAMAGES
40

**Law Offices of Jerry L. Steering**

(By Plaintiffs Against Defendants CORNETT, THOMAS, HORN, FLANNERY and DOES 1 through 6, inclusive)

141.   Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 140, inclusive, above, as if set forth in full herein.

142.   The actions of defendants CORNETT, THOMAS, HORN, FLANNERY and DOES 1 through 6, inclusive, as complained of herein, interfered with, and/or attempted to interfere with, by use of threats, intimidation, and coercion, the exercise or enjoyment by Plaintiffs of the rights secured by the Constitution and laws of the United States, and of the rights secured by the California Constitution and otherwise by California law, in violation of California Civil Code §52.1; to wit; the false arrests and false imprisonments of the plaintiffs by said defendants.

143.   Defendants CORNETT, THOMAS, HORN, FLANNERY and DOES 1 through 6, inclusive, are liable to Plaintiffs for said violations of their constitutional rights, pursuant to California Civil Code §52.1, and California Government Code §§815.2(a), 815.6, 820, 820.8.

144.   As a direct and proximate result of the actions of defendants CORNETT, THOMAS, HORN, FLANNERY and DOES 1 through 6, inclusive, Plaintiffs: 1) were substantially physically, mentally and emotionally injured; 2) incurred medical and psychological costs, bills and expenses and 3) incurred other special and general damages and expenses in an amount to be proven at trial which is in excess of $5,000,000.00; including treble damages.

THIRD AMENDED COMPLAINT FOR DAMAGES

145.   The actions of defendants CORNETT, THOMAS, HORN, FLANNERY and DOES 1 through 6, inclusive, were committed maliciously, oppressively and/or in reckless disregard of plaintiffs' constitutional rights sufficient for an award of punitive / exemplary damages against all defendants, save for Defendant COUNTY, in an amount to be proven at trial in excess of $3,000,000.00.

146.   In addition, as a result of the actions of defendants CORNETT, THOMAS, HORN, FLANNERY and DOES 1 through 6, inclusive, as complained of herein, constituted a violation of California Civil Code § 52.1, and, therefore, plaintiffs are entitled to an award of treble compensatory damages against all defendants, and punitive damages, and each of them, save the COUNTY.

### SIXTH CAUSE OF ACTION
False Arrest / False Imprisonment
Under California State Law
(By Plaintiffs Against Defendants CORNETT, THOMAS, HORN, FLANNERY and DOES 1 through 6, inclusive)

147.   Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 146, inclusive, above, as if set forth in full herein.

148.   As complained herein, PARNELL and MARELS were arrested at their home and in their home by defendants THOMAS, HORN, FLANNERY and DOES 1 through 6, inclusive, without a warrant and without consent to be inside of PARNELL and MARELS' home.

THIRD AMENDED COMPLAINT FOR DAMAGES

42

**Law Offices of Jerry L. Steering**

149.   Defendants CORNETT, THOMAS, HORN, FLANNERY and DOES 1 through 6, inclusive, did not have probable cause to believe that PARNELL or MARELS had committed a crime.

150.   Defendants CORNETT, THOMAS, HORN, FLANNERY and DOES 1 through 6, inclusive, restrained and/or brutalized and/or deprived PARNELL and MARELS of their liberty.

151.   Defendants CORNETT, THOMAS, HORN, FLANNERY and DOES 1 through 6, inclusive, intentionally deprived PARNELL and MARELS of their freedom of movement by use of physical force and violence.

152.   PARNELL and MARELS did not consent to said deprivation of their freedom of movement by defendants CORNETT, THOMAS, HORN, FLANNERY and DOES 1 through 6, inclusive, or to the use of force and violence upon him.

153.   PARNELL and MARELS suffered harm because of said deprivation of their freedom of movement by defendants CORNETT, THOMAS, HORN, FLANNERY and DOES 1 through 6, inclusive.

154.   The actions committed by defendants CORNETT, THOMAS, HORN, FLANNERY 1 through 6, inclusive, as complained of herein, constituted a false arrest / false imprisonment of PARNELL and MARELS under California state law.

155.    Defendants, and each of them, are liable to PARNELL and MARELS for said false arrest / false imprisonment, pursuant to Cal. Government Code §§ 815.2(a), 815.6, 820, 820.2, 820.8, and otherwise pursuant to the common-law.

156.    The actions committed by defendants THOMAS, HORN, FLANNERY and DOES 1 through 6, inclusive, as complained of herein, proximately caused PARNELL and MARELS to suffer substantial physical injuries, severe mental and emotional distress and suffering, medical / psychological bills, costs and expenses, and other costs and expenses, in an amount to be proven at trial which is in excess of $5,000,000.00.

157.    The actions of defendants THOMAS, HORN, FLANNERY and DOES 1 through 6, inclusive, were committed maliciously, oppressively and constituted despicable conduct, sufficient for an award of punitive / exemplary damages against all defendants and each of them, save for defendant COUNTY, in an amount to be proven at trial which is in excess of $5,000,000.00.

<u>SEVENTH CAUSE OF ACTION</u>
Assault
Under California State Law
(By Plaintiffs Against Defendants CORNETT, THOMAS, HORN and DOES
1 through 6, inclusive)

158.    Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 157, inclusive, above, as if set forth in full herein.

159.    The actions committed by defendants CORNETT, THOMAS, HORN and DOES 1 through 6, inclusive, as complained of herein, constituted an assault of

THIRD AMENDED COMPLAINT FOR DAMAGES
44

PARNELL and MARELS under California state law, as PARNELL and MARELS were unlawfully placed in reasonable fear of receiving an imminent violent injury by defendants CORNETT, THOMAS, HORN and DOES 1 through 6, inclusive.

160.    Defendants, and each of them, are liable to PARNELL and MARELS for said assault, pursuant to Cal. Government Code §§ 815.2(a), 815.6, 820 and 820.8, pursuant to the California Constitution, and otherwise pursuant to the common law.

161.    As a direct and proximate result of the actions of defendants CORNETT, THOMAS, HORN and DOES 1 through 6, as complained of herein, PARNELL and MARELS: 1) were substantially physically, mentally and emotionally injured, 2) incurred medical and psychological costs, bills and expenses, 3) lost the use and possession of their real and personal property and 4) incurred other special and general damages and expenses; all in an amount to be proven at trial which is in excess of $5,000,000.00.

162.    The actions of defendants CORNETT, THOMAS, HORN and DOES 1 through 6, inclusive, were committed maliciously, oppressively and constituted despicable conduct, sufficient for an award of punitive / exemplary damages against all defendants, save for Defendant COUNTY, in an amount to be proven at trial which is in excess of $10,000,000.00.

EIGHTH CAUSE OF ACTION
Battery
Under California State Law
(By Plaintiffs Against Defendants CORNETT, THOMAS, HORN and DOES
1 through 6, inclusive)

THIRD AMENDED COMPLAINT FOR DAMAGES
45

**Law Offices of Jerry L. Steering**

**Law Offices of Jerry L. Steering**

169.   Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 168, inclusive, above, as if set forth in full herein.

170.   The actions committed by defendants CORNETT, THOMAS, HORN and DOES 1 through 6, inclusive, as complained of herein, constituted unjustified non-consensual use of unlawful force and violence upon PARNELL and MARELS, and constituted a battery of PARNELL and MARELS under California State Law.

171.   Defendants, and each of them, are liable to PARNELL and MARELS for said battery, pursuant to Cal. Government Code §§ 815.2(a), 815.6, 820, 820.8 and otherwise pursuant to the common-law.

172.   As a direct and proximate result of the actions of defendants CORNETT, THOMAS, HORN and DOES 1 through 6, inclusive, as complained of herein, PARNELL and MARELS: 1) were substantially physically, mentally and emotionally injured; 2) incurred medical and psychological costs, bills and expenses, and 3) incurred other special and general damages and expenses, all in an amount to be proven at trial which is in excess of $5,000,000.00.

173.   The actions by defendants CORNETT, THOMAS, HORN and DOES 1 through 6, inclusive, as complained of herein, were committed maliciously, oppressively and constituted despicable conduct, sufficient for an award of punitive / exemplary damages against all defendants and each of them, save for Defendant COUNTY, in an amount to be proven at trial which is in excess of $50,000,000.00.

THIRD AMENDED COMPLAINT FOR DAMAGES

## NINTH CAUSE OF ACTION

Trespass To Private Residence - Invasion Of Right To Privacy
Under California State Law
(By all Plaintiffs, as Against Defendants CORNETT, DEANNE, CALLAHAN, TITUS, THOMAS, HORN and DOES 1 through 6, inclusive)

174.   Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 173, inclusive, above, as if set forth in full herein.

175.   As shown above, Plaintiffs lawfully occupied their house, a private residence located at 18458 Eucalyptus Avenue, Lake Elsinore, CA 92532, in the County of Riverside.

176.   As complained of herein, Defendants CORNETT, DEANNE, CALLAHAN, TITUS, THOMAS, HORN and DOES 1 through 6, inclusive, unlawfully entered and/or caused others to unlawfully enter Plaintiffs' home.

177.   As complained of herein, Plaintiffs did not voluntarily consent to the entry into their home by defendants CORNETT, DEANNE, CALLAHAN, TITUS, THOMAS, HORN and DOES 1 through 6, inclusive,  had lawfully obtained a search warrant, nor had they any exigent circumstances so as to legally justify said warrantless intrusion into Plaintiffs' home.

178.   Said actions committed by defendants CORNETT, DEANNE, CALLAHAN, TITUS, THOMAS, HORN and DOES 1 through 6, inclusive,  as complained of herein,

Law Offices of Jerry L. Steering

constituted a trespass to the plaintiffs' home[59], and an invasion of their right to privacy under California Law, and otherwise under the California Constitution.

179.   Defendants, and each of them, are liable to Plaintiffs for their damage pursuant to Cal. Government Code §§815.2, 815.6, 820 and 820.8, pursuant to the California Constitution, and otherwise pursuant to the common law.

180.   As a direct and proximate result of the actions of defendants CORNETT, DEANNE, CALLAHAN, TITUS, THOMAS, HORN and DOES 1 through 6, inclusive, plaintiffs: 1) were substantially physically, mentally and emotionally injured, 2) incurred medical and psychological costs, bills and expenses, 3) lost the use and possession of his real and personal property and 4) incurred other special and general damages and expenses; all in an amount to be proven at trial which is in excess of $5,000,000.00.

181.   The actions of defendants CORNETT, DEANNE, CALLAHAN, TITUS, THOMAS, HORN and DOES 1 through 6, inclusive, as complained of herein, were committed maliciously, oppressively and/or in reckless disregard of Plaintiffs' constitutional rights, sufficient for an award of punitive / exemplary damages against all defendants and each of them, save for Defendant COUNTY, in an amount to be proven at trial which is in excess of $3,000,000.00.

<u>TENTH CAUSE OF ACTION</u>
<u>CONVERSION</u>
Under California State Law

---

[59] MARELS as a temporary resident of said home.

THIRD AMENDED COMPLAINT FOR DAMAGES

48

Law Offices of Jerry L. Steering

(By All Plaintiffs Against Defendants CORNETT, THOMAS, HORN and DOES 1 through 6, inclusive)

182.  Plaintiffs hereby realleges and incorporate by reference the allegations set forth in paragraphs 1 through 181, inclusive, above, as if set forth in full herein.

183.  As shown above, plaintiff owned the two Ditch Witch locators "taken" by the defendants.

184.   Also as shown above, plaintiff rightfully owned and possessed said Ditch Witch located.

185.   Also as shown above, defendants took said property from the plaintiff, without legal justification to do so, and permanently kept said property from plaintiffs.

186.   As a proximate result of said tortious and criminal actions by defendants against the plaintiff, the plaintiff suffered the loss of said Ditch Witch locators, the loss of use of his business equipment, substantial lost profits and business losses, and suffered mental and emotional distress, pain and suffering; said damages being in an amount to be proven at trial, in excess of $5,000,000.00.

187.   In addition to the above and foregoing, said defendants' action were done maliciously, oppressively, fraudulently, and were despicable; sufficient for an award of punitive damages in an amount in excess of $5,000,000.00.

ELEVENTH CAUSE OF ACTION
TRESPASS TO CHATTELS
Under California State Law
(By All Plaintiffs Against Defendants CORNETT, DEANNE, CALLAHAN, TITUS, THOMAS, HORN and DOES 1 through 6, inclusive)

THIRD AMENDED COMPLAINT FOR DAMAGES

49

**Law Offices of Jerry L. Steering**

188.   Plaintiff hereby realleges and incorporate by reference the allegations set forth in paragraphs 1 through 187, inclusive, above, as if set forth in full herein. As shown above, plaintiff owned the two Ditch Witch locators at issue taken by the defendants.

189.   Also as shown above, defendants took said property from the plaintiff, without legal cause or legal justification to do so, and permanently kept said property from plaintiffs.

190.   As a proximate result of said tortious and criminal actions by defendants against the plaintiff, the plaintiff suffered the loss of said Ditch Witch locators, the loss of use of his equipment, substantial lost profits and business losses, and suffered severe mental and emotional distress, pain and suffering; said damages being in an amount to be proven at trial, in excess of $15,000,000.00.

191.  In addition to the above and foregoing, said defendants' action were done maliciously, oppressively, fraudulently, and were despicable; sufficient for an award of punitive damages in an amount in excess of $5,000,000.00.

### TWELTH CAUSE OF ACTION
Negligence
Under California State Law
(By all Plaintiffs, as Against all Defendants)

192.   Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 191, inclusive, above, as if set forth in full herein.

THIRD AMENDED COMPLAINT FOR DAMAGES

Law Offices of Jerry L. Steering

193.   Defendant COUNTY knew, and/or with the exercise of reasonable diligence should have known, of the violent propensities of Defendants THOMAS, HORN and DOES 1 through 5, inclusive, who brutalized, degraded, and humiliated Plaintiffs as complained of herein.

194.   Moreover, the actions committed by Defendants THOMAS, HORN and DOES 1 through 5, inclusive, as complained of herein and as described above, also constituted a breach of defendants' duty to use due care toward Plaintiffs.

195.   Moreover, defendant COUNTY breach its duty of care the Plaintiffs, and to members of the public similarly situated, by failing to train its deputy sheriffs that they have no right to order persons to leave their homes, and no right to use force to get them to do so, against their will.

196.   Moreover, defendant COUNTY breach its duty of care the Plaintiffs, and to members of the public similarly situated, by failing to train its deputy sheriffs that they have no right to use such force against persons, such as that force used against Plaintiffs PARNELL and MARELS, as described above.

197.   As a direct and proximate result of the actions committed by Defendants THOMAS, HORN and DOES 1 through 5, inclusive, as complained of herein, Plaintiffs: 1) were substantially physically, mentally and emotionally injured; 2) incurred medical and psychological costs, bills and expenses and 3) incurred other special and general

damages and expenses in an amount to be proven at trial, which is in excess of $5,000,000.00.

**WHEREFORE**, plaintiffs pray for judgment against defendants, and each of them, as follows:

1.    That plaintiffs be awarded a judgment against all defendants for compensatory damages, in an amount in to be proven at trial which is in excess of $5,000,000.00, plus treble damages of said amounts;

2.    That plaintiffs be awarded a judgment against all defendants, save COUNTY, for punitive / exemplary damages in an amount in to be proven at trial which is in excess of $3,000,000.00;

3.    That plaintiff be awarded reasonable attorney's fees and costs of suit herein;

4.    That plaintiff be given a trial by jury; and

5.    That this Honorable Court award any other and/or additional relief as it deems just and equitable.

LAW OFFICES OF JERRY L. STEERING



Jerry L. Steering

/

THIRD AMENDED COMPLAINT FOR DAMAGES
52

Law Offices of Jerry L. Steering

# EXHIBIT "A"

**ROADRUNNER CONSTRUCTION SUPPLY**

**INVOICE**

4075 VERNON AVE.
RIVERSIDE, CA 92509
WWW.ROADRUNNERSUPPLY.COM

736762

| SOLD TO | | SHIP TO | | | |
|---|---|---|---|---|---|
| HD Services | | | | | |
| ADDRESS | | ADDRESS | | | |
| CITY, STATE, ZIP | | CITY, STATE, ZIP | | | |
| Temecula, CA | | | | | |
| CUSTOMER ORDER NO. | SOLD BY | TERMS | F.O.B. | | DATE 12/4/11 |

| ORDERED | SHIPPED | DESCRIPTION | | PRICE | UNIT | AMOUNT |
|---|---|---|---|---|---|---|
| 1 | 1 | Grease | | $169ºº | | $169 ºº |
| 1 | 1 | 752 Water 8281296 | | $3500 | | $3500 |
| | | | | | | $3569 ºº |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

A-6540  7-48709/48721

**EXHIBIT A**

# EXHIBIT "B"



EXHIBIT B - 1

# EXHIBIT "C"



**EXHIBIT C - 1**

# EXHIBIT "D"

**PARP**

**0564721**
**Trey Grayson**
**Secretary of State**
Received and Filed
**10/7/2009 11:04:05 AM**
**Fee receipt:  $15.00**

# Commonwealth of Kentucky
# Trey Grayson, Secretary of State

| | | |
|---|---|---|
| Trey Grayson<br>Secretary of State<br>P. O. Box 1150<br>Frankfort, KY 40602-1150<br>(502) 564-3490<br>http://www.sos.ky.gov | **Annual Report<br>Online Filing** | **ARP** |

**Company:**            INTERTECH, INC.
**Company ID:**        0564721
**State of origin:**      Kentucky
**Formation date:**    7/25/2003 12:00:00 AM
**Date filed:**           10/7/2009 11:04:05 AM
**Fee:**                     $15.00

**Principal Office**

1219 cooper ave
louisville, KY 40219

**Registered Agent Name/Address**

JAMES W PAINTER JR
1219 COOPER AVE
LOUISVILLE, KY 40219

**Current Officers**

| President | James W Painter, Jr. | 1219 cooper ave louisville, ky |
|---|---|---|

**Signatures**

| **Signature** | james w painter jr |
|---|---|
| **Title** | president |

EXHIBIT D - 1

# EXHIBIT "E"



HOME | CONTACT US

**If you are looking for company directory for contact and company information for public and private companies? Kentucky Business Directory is for you !**

Advertising



**Company tags:** Heavy Construction Excavation Contractors Land Preparation Contractors

**Intertech Inc in Louisville, Kentucky (KY)**

**1219 Cooper Avenue**
**Louisville , KY , 40219**
Phone: **(502) 966-0598**

Is this your business?
Edit company info



Map data ©2012 Google -

**Driving Directions**

Street:
City:    Louisville
State:   Kentucky

[ Get Directions ]

**Related companies:**

- Flynn Brothers Contracting Inc - Main Office
- Shulthise Leo K Contractor
- Bluegrass Concrete Cutting & Drilling Inc
- Southern Pipeline Training Center
- Southern Pipeline Construction CO

Advertising

**Roofing Kentucky**

Call Kentucky's #1 Roofing Company
Residential Roofing in Kentucky
www.AmericanRoofingOnline.com

AdChoices ▷

EXHIBIT E - 1

© 2008-2011. Kentucky Business Directory of Business Contacts and Company Information.

EXHIBIT E - 2



**KENTUCKY**
Business Listing

HOME | CONTACT US

If you are looking for company directory for contact and company information for public and private companies? Kentucky Business Directory is for you !

Advertising



**Southern Pipeline Construction CO in Louisville, Kentucky (KY)**

1272 Old Fern Valley Road
Louisville , KY , 40219
Phone: **(502) 966-5195**

Is this your business?
Edit company info



**Company tags:** Utilities Contractors Sewer & Water Contractors Pipelines & Pipeline Services Water Mains & Waterworks Sewer & Water Utilities Contractors Heavy Construction Pipelines Contractors

**Driving Directions**

Street:
City:      Louisville
State:    Kentucky

Get Directions

**Related companies:**

- Southern Pipeline Training Center
- Watts Brothers Cable
- Bluegrass Concrete Cutting & Drilling Inc
- Intertech Inc
- Shulthise Leo K Contractor

Advertising

**Business Internet & Phone**
Free Smartphone with Purchase of
Qualifying Plans. Call 888.595.2102
www.att.com/SmallBusiness

AdChoices ▷

EXHIBIT E - 3

© 2008-2011. Kentucky Business Directory of Business Contacts and Company Information.

EXHIBIT E - 4